**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **CITY OF CHATTANOOGA,** | : | |
| **TENNESSEE, individually and** | : | |
| **on behalf of all states, political** | : | |
| **subdivisions thereof, and state** | : | |
| **pension plans similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:09cv516 (WWE)** |
| | : | |
| **HARTFORD LIFE INSURANCE** | : | |
| **COMPANY, a Connecticut** | : | |
| **corporation; THE HARTFORD** | : | |
| **FINANCIAL SERVICES GROUP, INC.,** | : | |
| **a Delaware corporation,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF DECISION ON DEFENDANTS'**
**MOTION TO DISMISS**

_____Plaintiff City of Chattanooga, Tennessee, has filed this putative class action for

injunctive and equitable relief on behalf of its pension plan and all other similarly-

situated pension plans against defendants Hartford Life Insurance Company ("HLIC")

and Hartford Financial Services Group, Inc. ("HFSG").  Plaintiff asserts claims of breach

of fiduciary duty and unjust enrichment.  Defendants have moved to dismiss the

complaint for failure to state a claim.  For the following reasons, the motion to dismiss

will be granted.

**BACKGROUND**

For purposes of ruling on this motion, the Court considers the allegations of the

complaint to be true.

1

Plaintiff is the sponsor of the City of Chattanooga Deferred Compensation Plan ("Plan") established in 1979 as a benefit for city employees.  Hartford Variable Annuity Life Insurance Company ("HVALIC"), a wholly-owned subsidiary of defendant HFSG, was named as a provider to the Plan.   The City authorized the purchase of annuity contracts from HVALIC to effectuate the purpose of the Plan.  Subsequently, defendant HLIC assumed all functions from HVALIC with respect to the Plan.

From the commencement date of the Plan to the present, the Plan has been a participant directed deferred compensation retirement plan.  Pursuant to standard form group annuity contracts, defendants maintain individual accounts for Plan participants, and provide a platform of investment options, including mutual funds.  Defendants act as the agent in investing the deferred compensation in the investment options and as the agent and trustee in holding the assets of the participants.  Defendants were entrusted with and given the sole decision making authority in selecting the investment options available within the variable annuity products.  Defendants maintained control over the investment options made available to the participants for investment under the group annuity contract.

Defendants' group annuity contract expressly enumerates the requisite remuneration to which defendants are entitled, which amount includes the payment of investment expenses as well as daily charges for mortality, expense risks and administrative undertakings.  In return for these charges, defendants provide all services necessary for the administration of the contracts, including record keeping, Plan participant servicing, and communications with Plan participants.

At some point, certain investment entities began to make revenue sharing

2

payments to defendants based upon a percentage of Plan participants' assets invested through defendants.  The revenue sharing payments represent additional, undisclosed and extra-contractual compensation received by defendants.  The revenue sharing payments from investment entities come directly from and reduce the assets of the Plan participants by way of reductions in the value of their mutual fund holdings.  Defendants have obtained "secret profits" as a result of the revenue sharing.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).  The complaint is sufficient if the well-pleaded factual allegations plausibly give rise to an entitlement to relief.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Defendants first argue that plaintiffs' claims are precluded by the Securities Litigation Uniform Standards Act, ("SLUSA"), 15 U.S.C. § 77p(b), which precludes private state-law "covered" class actions alleging untruth or manipulation in connection with the purchase or sale of a "covered" security in state or federal court.[1]  Plaintiff

---

[1]A "covered class action" is a lawsuit in which damages are sought on behalf of more than 50 people, and a "covered security" is one traded nationally and listed on a

argues that it has alleged state common law actions of breach of fiduciary duty and unjust enrichment that are not covered by SLUSA.

Courts must look to the substance of a complaint's allegations in applying SLUSA to prevent a claimant from eluding SLUSA's prohibitions through artful pleading. Segal v. Fifth Third Bank, N.A., 581 F.3d 305, 310 (6th Cir. 2009). However, the alleged misrepresentation need not represent "an essential legal element" to fall within SLUSA preclusion. Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 302 (3d Cir. 2005).

In this instance, the asserted claims of breach of fiduciary and unjust enrichment are based on the same factual predicate: Defendants selected investment options for Plan participants that included mutual funds with revenue sharing arrangements; defendants created a "conflict of interest by selecting investment options from which they received "undisclosed" and "unauthorized" revenue sharing payments; and defendants received "secret" profits that belonged to the participant assets by accepting revenue sharing payments. Thus, at its core, the complaint alleges that defendants failed to disclose a material fact or made a misrepresentation in connection with the Plan participants' investment options selected by defendants. See, e.g., Beary v. Nationwide Life Ins. Co., 2007 WL 4643323, *4 (S.D. Ohio 2007) (substance of plaintiff's breach of fiduciary duty based on defendant's receipt of revenue sharing payments for its own use was that defendant misrepresented or omitted disclosure of material facts about the relationship). The first element of a claim within SLUSA is

_____

regulated national exchange. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 83 (2006).

satisfied.

Plaintiff questions whether this case involves "covered securities" because the separate accounts were not "covered securities" for at least part of the class period. However, as noted in the factually-analogous <u>Beary</u>, this case involves revenue sharing payments from mutual funds that were at all times "covered securities" for the entire period alleged in the class action.[2] <u>Id.</u> at *4 n.3.

The alleged wrongful conduct is "in connection" with a purchase or sale of securities where it coincides with a securities transaction by plaintiff or a third party. <u>Dabit</u>, 547 U.S. at 85. Here, the purchase of mutual funds with the undisclosed revenue sharing payments resulted in the defendants' "secret" profits and the conflict of interest; and the undisclosed revenue sharing payments of "secret" profits occurred on the basis of assets held in participant accounts. These allegations satisfy the "in connection with" requirement of SLUSA. <u>Id.</u> at 86 (SLUSA applies broadly to claims brought by holders of securities). Further, courts have generally rejected the position advanced by plaintiff that the "in connection with" element requires that the alleged wrong doing must have altered the value of the securities. <u>See</u> <u>Beary v. ING Life Ins. and Annuity Co.</u>, 520 F. Supp. 2d 356, 362 (D. Conn. 2007) (citing cases). Accordingly, the claims of breach of fiduciary of duty are within SLUSA's ambit and must be dismissed unless plaintiff meets SLUSA's state entity exception.

---

[2]Mutual funds are "covered securities" within the meaning of SLUSA. <u>Instituto de Prevision Militar v. Merrill Lynch</u>, 546 F.3d 1340, 1351 n.2 (11th Cir. 2008).

State Entity Exception

The state entity exception of SLUSA, 15 U.S.C. § 77p(d)(1)-(3), provides, in relevant part:

> Notwithstanding any other provision of this section, nothing in this section may be construed to preclude a State or political subdivision thereof or a State pension plan from bringing an action involving a covered security on its own behalf, or as a member of a class comprised solely of other States, political subdivisions, or State pension plans that are named plaintiffs, and that have authorized participation, in such action.

In conducting statutory interpretation, the court begins with the language of the statute. Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 108 (2d Cir. 2001). Where a statutory text is unambiguous, the inquiry ordinarily ends. Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). However, the expression of contrary legislative intent can rebut the presumption that "the plain language of a statute expresses congressional intent." United States v. Koh, 199 F.3d 632, 637 (2d Cir. 1999).

Defendants argue that the instant action falls outside the scope of the state entity exception because it is brought on its own behalf and that of all similarly-situated States, political subdivisions thereof, and state pension plans. Defendants maintain that the exception applies only where the class is composed of named plaintiffs that have authorized participation.

The plain language of the statute supports defendants' view of the statutory exception. Nevertheless, plaintiff asserts that such a construction would prove contrary to the legislative intent to preserve the needs of state governments and pension plans to pursue state law remedies to protect investors and taxpayers. Plaintiff maintains that the SLUSA state entity exception uses language similar to that of the Fair Labor

6

Standards Act ("FLSA") opt-in provision for collective actions and should therefore be construed as an opt-in provision.

FLSA, 29 U.S.C. § 216(b), provides: "No employee shall be a party to any such action unless he gives his consent to become such a party and such consent is filed in the court in which such action is brought."  Review of the statutory provisions demonstrates that plaintiff's argument runs contrary to a reasonable interpretation of SLUSA's state entity exception's plain language.  While the FLSA allows for a party to file their consent in the court where the action is brought, its opt-in provision does not indicate the timing of the consent.  By contrast, the SLUSA language indicates that the state entity must have "authorized" its participation at the time the action is brought.

Additionally, the legislative history of the SLUSA state entity exception reveals that the requirement that each plaintiff be named and authorize participation was enacted to prevent "the provision from serving as a loophole through which abusive suits could be brought on behalf of pension funds and municipalities that have no interest in bringing suit, simply in order to extort a large settlement out the defendant."  House Report No. 105-640, 1998 WL 414917, *16 (July 21, 1998).  As defendants point out, the opt-in approach would not curtail the concern that class actions could be used as "strike suits."   Accordingly, the Court finds that the state entity exception does not apply to the instant action.  The Court will dismiss the action without prejudice to repleading legally tenable claims.

## CONCLUSION

For the foregoing reasons, the motion to dismiss [doc. #22] is GRANTED without prejudice.  Plaintiff is allowed 20 days from this ruling's filing date to file an amended

complaint consistent with this ruling.  If plaintiff does not file an amended complaint

within that time period, the case will be closed.

_____/s/_____
Warren W. Eginton
Senior U.S. District Judge

Dated this _15th___ day of December, 2009 at Bridgeport, Connecticut.